| | | |
|---|---|---|
| **C.T.** | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. |
| **SHRI HARI RALEIGH, LLC d.b.a. MOTEL 6, G6 HOSPITALITY LLC** | : | JURY TRIAL DEMANDED |
| Defendants, | : | |

# COMPLAINT

AND NOW, come the Plaintiff, by Levine Law Group and Andreozzi + Foote, who file this Complaint against the Defendants, **Shri Hari Raleigh, LLC, d.b.a. Motel 6, G6 Hospitality LLC,** and in support thereof, state as follows:

## INTRODUCTION

1. This action for damages is brought by Plaintiff, survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3. Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud, and coercion by a trafficker(s) to engage in commercial sex at the subject hotel, by being psychologically and physically prohibited from escape by a trafficker(s), or alternatively, was a

minor at the time of the trafficking.

4. The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5. Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

## PARTIES

6. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff name and address is not contained herein protect the safety, privacy and identity of sex trafficked victim(s). Nationwide similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

7. Plaintiff is currently a resident of North Carolina.

8. Plaintiff was born in 2000.

9. At all times relevant and material, Defendant Shri Hari Raleigh, LLC, d.b.a. Motel 6 (hereinafter "Defendant Shri Hari") is a North Carolina limited liability company with a registered service agent, Rekha Patel, at 864 Bay Bouquet Lane, Apex, NC 27523.

10. Defendant Shri Hari, was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Motel 6, located at 2641 Appliance Ct, Raleigh, NC 27604, during the relevant period, and prior thereto, and as such

Page **2** of **18**

Case 4:25-cv-00211-FL    Document 1    Filed 11/04/25    Page 2 of 18

responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

11. During the relevant period, Defendant Shri Hari was operator of the aforesaid subject premises.

12. Defendant Shri Hari acted as a Franchisee and not a Franchisor for the subject aforesaid premises.

13. At all times relevant and material, Defendant G6 Hospitality LLC (hereinafter "Defendant G6 Hospitality") is a Delaware limited liability company registered to do business in North Carolina, with its headquarters in Carrollton, Texas.

14. Defendant G6 Hospitality has a registered service agent, Cogency Global Inc., at 2810 Coliseum Drive, Suite 120, Charlotte, NC 28217.

15. Defendant G6 Hospitality owns, manages, or operates more than 1,400 motels under the Motel 6 brand. In managing all its Motel 6 brand properties, Defendant G6 Hospitality receives an application fee, a lump sum payment, royalties, and/or other financial benefits from its Motel 6 branded properties.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendants conduct business within this District pursuant to 28 U.S.C. § 1391(b).

# FACTS

18. As it pertains to the subject Defendants, Plaintiff was sex trafficked at the aforesaid hotel(s), owned and operated by Defendants, by her trafficker(s) in 2017 and through and inclusive of 2018.

19. Plaintiff's trafficker(s) forced an/or coerced Plaintiff to be trafficked through trickery, physical violence and economic pressure.

20. The Plaintiff's trafficker(s) advertised the Plaintiff's availability to engage in sex at the subject hotel on the internet.

21. The Plaintiff was sexually abuses by numerous adult men and/or women while at the subject hotel.

22. As a result of the numerous instances of sexual abuse, there was significant foot traffic in and out of the rooms.

23. Sex trafficking occurred at this subject hotel, upon information and belief, prior to Plaintiff's trafficking.

24. Defendants knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

25. As a hotel owner and hotel operator, Defendants controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

26. A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotel and motels.

27. The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

28. In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel(s) name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

---

[1] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL(S) ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3 /.
[2] *Global Report on Trafficking in Persons*, UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf /. See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html /.
[3] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.
[4] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry /; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf /.

29. Further, nationwide campaigns have recognized the issue of human trafficking in the hotel(s) industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

30. These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

31. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendants on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

32. Years before Plaintiff was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

33. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

34. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well

---

[5] *The Blue Heart Campaign,* UNITED NATIONS (2022), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime /.
[6] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone /.

as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

35. Due to the involvement and affirmative actions of Defendants (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by her trafficker(s) on Defendants' premises in violation of the TVPRA, including, but not confined to, by:

   a. Defendants repeatedly rented rooms to Plaintiff's trafficker(s) when Defendants knew or should have known said trafficker(s) was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA;

   b. Defendants associating with Plaintiff's trafficker(s) in an effort to force her to serve their business objective;

   c. Defendants allowing commercial dealings with the aforesaid trafficker(s) (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

   d. Defendants' staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the trafficker(s) so as to alert the aforesaid trafficker(s) of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

   e. Defendants actively advancing the sex trafficking operation of Plaintiff's trafficker(s) by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,

   f. Defendants were otherwise being actively involved and affirmatively enabling Plaintiff's trafficker(s) and facilitating the venture's success, Plaintiff was caused to be sex trafficked by her trafficker(s) on Defendants premises in violation of the TVPRA.

36. Before and during the relevant period, Defendants failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

37. Defendants failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotel including as to Plaintiff herein and in violation of the TVPRA.

38. Had the Defendants timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel would have been prevented or mitigated.

39. Due to the failure of Defendants to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendants premises in violation of the TVPRA.

40. Defendants by its passive or active involvement and affirmative enabling of the subject trafficking was a proximate and competent cause and substantial factor in causing P Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiff severe injury.

41. Because of the foregoing conduct of Defendants, the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

42. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendants.

43. At all relevant times, Plaintiff was involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex.

44. Plaintiff is a "victim" of sex trafficking as protected under applicable provisions

of the TVPRA.

45. As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotel owned and operated by Defendants.

46. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

47. Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

48. More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the trafficker(s) who directly violated § 1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker(s) who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendant.

49. In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, trafficker(s) used various means to do so including but not limited to (a) trafficker(s) utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants' staff; (b) trafficker(s) instilled in Plaintiff the fear of severe bodily injury and/or fear of death if trafficker(s)'s directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the trafficker(s) of Plaintiff to induce sex with sex buyers at

the subject hotel.

50. Defendants knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her trafficker(s) (or at the direction of her trafficker(s)) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

51. Defendants rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

52. The rental of a hotel(s) room constitutes a financial benefit from a relationship with the trafficker(s) sufficient to meet "financially benefitted" element of the §1595(a) standard.

53. Plaintiff trafficker(s) took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

54. In addition, Defendants received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her trafficker(s) online) and from such Wi-Fi service Defendants, upon information and belief, received financial benefit.

55. Defendants participated in a venture by operating the subject hotel that rented rooms to individuals that Defendants, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

56. During the time Plaintiff was trafficked at the subject hotel, Plaintiff's trafficker(s) had direct interaction with employee(s) and staff of Defendants by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendants to act as lookout(s)/informant(s) for Plaintiff's trafficker(s), while acting in their scope of employment, so

as to inform the trafficker(s) of police activity or other similar type alerts.

57. In this case, during the relevant period alleged herein, Defendants took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's trafficker(s) that violated the TVPRA.

58. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

59. Defendants operating the subject hotel and renting out rooms to Plaintiff's trafficker(s) was an enterprise involving risk and potential profit.

60. Defendants operating the subject hotel and renting out rooms to Plaintiff's trafficker(s) was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

61. By renting rooms to Plaintiff's trafficker(s) Defendants, the hotel(s) owner and operator, was associating with Plaintiff's trafficker(s) in an effort to force Plaintiff to serve their business objective.

62. The modus operandi of the trafficker(s) was to renew the room(s) rental daily.

63. A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's trafficker(s), in part, in that the hotel(s) repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

64. Plaintiff's trafficker(s) had prior commercial dealings with the subject hotel which the trafficker(s) and Defendants wished to reinstate for profit when Plaintiff's trafficker(s) repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

65. Defendants had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

66. Defendants knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

> (a) constant foot traffic of sex buyers to the trafficker(s)'s rented room(s) to have sex with trafficked victim(s);
> (b) trafficked victim(s) would walk around hotel(s) grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, and in sexually explicit clothing;
> (c) suspicious individuals loitering outside the hotel(s) room(s) when a sex buyer would enter a room(s);
> (d) inside the hotel(s) room(s) rented by the trafficker(s) (or at the direction of the trafficker(s)) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;
> (e) trafficker(s) monitoring hotel(s) hallway, door of room(s) and walking hotel(s) perimeter;
> (f) trafficker(s) shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel(s) staff;
> (g) Plaintiff soliciting for sex buyers on the hotel(s) premises at the direction of her trafficker(s),
> (h) Plaintiff's room exhibited signs of commercial sex work,
> (i) loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring
> (j) trafficker(s) utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendants staff
> (k) overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel in view and/or earshot of staff of Defendants, (4) trafficker(s) overtly asserting control over Plaintiff in common areas of the hotel(s) in view and/or earshot of staff of Defendants (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room
> and (l) other commonly known sex trafficking red flags which the above captioned Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel(s).

67. Defendants' staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

68. When being trafficked at the subject hotel, Plaintiff interacted with Defendants' staff, and Defendants' staff witnessed and observed Plaintiff, trafficker(s) as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

69. Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel(s) logo and/or by means of a staff member being in an employee restricted area.

70. Defendants were involved and affirmatively took actions as the hotel(s) owner and operator on Defendants' subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendants repeatedly renting rooms to Plaintiff's trafficker(s) when Defendants knew or should have known said trafficker(s) was engaged in sex trafficking on Defendants' premises including as to Plaintiff in violation of the TVPRA, (b) Defendants associating with Plaintiff's trafficker(s) in an effort to force her to serve their business objective, (c) Defendants allowing commercial dealings with the aforesaid trafficker(s) to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendants acting as lookouts and informants, while in the scope of their employment, for the benefit of the trafficker(s) so as to alert the aforesaid trafficker(s) of police activity or similar type warning alerts, (e) Defendants knowingly facilitating and/or negligently facilitating the trafficker(s)'s activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's trafficker(s) and facilitating their venture's success.

71. Defendants' failure, by its agents, servants, staff, and employees, to timely and

properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

72. Defendants, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel(s) room for unlawful purposes, (4) guest uses hotel(s) amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel(s) and (8) for other indicated reasons.

73. Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

74. As a direct and proximate result of Defendants involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel(s) property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendants' hotel(s) in violation of the TVPRA.

75. Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological

injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT II
## VIOLATION OF CHILD ABUSE VICTIMS RIGHTS ACT, 18 U.S.C. § 2255 ("CAVRA")

76. Any person who, while a minor, "was a victim of a violation of section . . . 1591 [among others] . . . and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2255.

77. Plaintiff was a minor at the time of the sex trafficking described herein in violation of § 1591.

78. Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT III
## VIOLATION N.C.G.S. § 14-43.11

79. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

80. "A person commits the offense of human trafficking when that person (i) knowingly or in reckless disregard of the consequences of the action recruits, entices, harbors, transports, provides, patronizes, solicits, or obtains by any means another person with the intent that the other person be held in involuntary servitude or sexual servitude or (ii) willfully or in reckless disregard of the consequences of the action causes a minor to be held in involuntary

servitude or sexual servitude." N.C.G.S. § 14-43.11(a).

81. "An individual who is a victim may bring a civil action against a person who violates this Article or a person who knowingly benefits financially or by receiving anything of value from participation in a venture which that person knew or should have known violates this Article." N.C.G.S. § 14-43.18(a).

82. Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of N.C.G.S. § 14-43.11 *et. al.*

83.

## COUNT IV
## NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS

84. At all times relevant, Defendants owed a duty to protect Plaintiff from harm while in the care of Defendants and/or Defendants' agents.

85. Pursuant to N.C.G.S. § 1-17(d), as amended by the SAFE Child Act (Session Law 2019-245), Plaintiff brings this action within the time permitted by law.

86. Defendants violated its duty, and was negligent, careless, grossly negligent, and/or reckless as follows:

    a. By failing to establish adequate sex trafficking prevention policies, procedures, and practices;
    b. By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;
    c. By failing to retain, hire, train, and supervise agents/employees with regard to the prevention of sex trafficking;
    d. By failing to adequately monitor and supervise the premises and/or Trafficker(s) and Plaintiff;
    e. By failing to know and react to the risks of sexual trafficking inherent in its activities;
    f. By failing to require sex trafficking training;

      g.      By failing to recognize the signs that Trafficker(s) was a sex trafficker or that Plaintiff were being sex trafficked;
      h.      By failing to report Trafficker(s) to the appropriate authorities; and,
      i.      By violating the duties imposed upon them pursuant to the Restatement of Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344, & 371.

87. As a direct and proximate cause of Defendants' actions and omissions, and breach of the duties of reasonable care, Plaintiff was injured, resulting in damages.

## JURY TRIAL DEMAND

Plaintiff hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the described losses with respect to the above cause of action;
b) Past and future emotional distress;
c) Consequential and/or special damages;
d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;
e) Disgorgement of profits obtained through unjust enrichment;
f) Restitution;
g) All damages allowable under the TVPRA;
h) Reasonable and recoverable attorney's fees;
i) Punitive damages with respect to each cause of action;
j) Costs of this action; and
k) Pre-judgement and all other interest recoverable

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Respectfully Submitted,

/s/Cathy A. Williams
Cathy A. Williams, Esq.
N.C. State Bar No. 33534
**Levine Law Group**
128 Medical Park Road, Suite 300
Mooresville, NC 28117


**Andreozzi + Foote**
J. Alexander Marcinko, Esq.
(Pro Hac Vice Pending)
Nathaniel Foote, Esq.
(Pro Hac Vice Pending)
Ashley Ventrillo, Esq.
(Pro Hac Vice Pending)
TeamD@vca.law
4503 N. Front Street, Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143


Dated: **11/04/2025**